IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JENNA-JO BIONDINO,**<br>            **Plaintiff,**<br><br>                v.<br><br>**BUCKS COUNTY TECHNICAL<br>SCHOOL AUTHORITY, operating as<br>BUCKS COUNTY TECHNICAL HIGH<br>SCHOOL, KIMBERLY CARON,**<br>            **Defendants.** | **CIVIL ACTION**<br><br><br><br><br>**NO.  24-1252** |

<u>**MEMORANDUM OPINION**</u>

Defendants Bucks County Technical School Authority (the "Authority"), operating as Bucks County Technical High School, and Kimberly Caron, a teacher there, move to dismiss Plaintiff Jenna-Jo Biondino's two-count Complaint—for violations of 42 U.S.C. § 1983, one predicated on a state-created danger theory, and the other on a *Monell* policy-or-custom theory—alleging that the school's poor management of a program that she was enrolled in led to her injuring her finger.  Fed. R. Civ. P. 12(b)(6).  Specifically, she contends that Defendants violated the Due Process Clause of the Fourteenth Amendment, which protects her right to bodily autonomy.  For the following reasons, the Court will grant Defendants' Motion, and Biondino's Complaint will be dismissed without prejudice.

**I.    BACKGROUND**[1]

According to her Complaint, at the time of the events that give rise to this case, Biondino was enrolled in Bucks County Technical High School's Emergency Medical Services program.[2]

---

[1] The below factual recitation is taken from Biondino's Complaint, well-pleaded allegations from which are taken as true at this stage.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

[2] There is a factual dispute over exactly what program Biondino was enrolled in.  Her Complaint alleges that she was enrolled in the school's "Emergency Medical Services program."  According to Defendants, that is only half the story.  They say that Biondino "was actually enrolled in a Pennsylvania Department of Education Homeland Security Law Enforcement, Firefighting and Related Protective Services program of which [Emergency Medical

As part of that program, she was instructed to engage in impact weapons training, in which students would pair up and spar, one holding a baton, and the other holding punch paddles. Such batons are classified by the Pennsylvania State Police as "less-lethal weapon[s]." The student with the punch paddles was instructed to hit the student holding the baton. Students holding the batons, including Biondino, were not provided any protective equipment to cover their hands and fingers. During the training, she was struck on the left hand and suffered a broken left pinky finger and "accompanying nerve damage and permanent limitations." This exercise "served no legitimate and reasonable teaching purpose for students in the Emergency Medical Services program, but was instead conducted for the reckless amusement or playful wantonness of the teachers and some students without any rational relationship to scholastic edification."

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be

---

Services] training is but one component." This is important, submit Defendants, because mock combat with punch paddles would be far more foreseeable in a law enforcement training program than in an emergency medical services one. The Court's grant of Defendants' Motion to Dismiss does not rely on the nature of the program in which Biondino was enrolled, so it is unnecessary to decide whether to consider the documentation that Defendants attach to their Motion. *See Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

### III.  DISCUSSION

Biondino has sued under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  Any viable Section 1983 claim requires plausible allegations: (1) of "the violation of a right secured by the Constitution and laws of the United States;" and, (2) "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  Biondino's Complaint presses two theories of liability under Section 1983, both alleging violations of the Fourteenth Amendment.  The first relies on Defendants' alleged creation of the "opportunity" for her to be injured "that otherwise would not have existed"—the "state-created danger" theory of liability.  *See Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017).  The second, directed only at the Authority, alleges that it maintained an official policy, practice, or custom that violated her constitutional rights.  *See Monell v. Dep't of Soc. Servs. of Cty. of N.Y.*, 436 U.S. 658, 690-91, 694 (1978).  As currently pleaded, Biondino is not plausibly entitled to relief under either theory.

### A.  State-Created Danger Liability

The Third Circuit has articulated four elements to a state-created danger claim under Section 1983:

1) the harm ultimately caused [by the state actor's conduct] was foreseeable and fairly direct;
2) a state actor acted with a degree of culpability that shocks the conscience;
3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete

>    class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Mann*, 872 F.3d at 170 (quoting *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006)); *see Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996).

Defendants argue that Biondino's Complaint should be dismissed because, among other things, its allegations do not plausibly rise to a level that would shock the conscience. "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Instead, "government action rises to the level of an actionable constitutional violation only when it is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) (quoting *Lewis*, 523 U.S. at 847). The "exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005) (quoting *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999)). Where, as here, the alleged injuries took place outside of "a 'hyperpressurized environment'"—events like high-speed chases and prison riots that share little in common with this case—a defendant's "deliberate indifference' may be sufficient to 'shock the conscience.'" *Id.* (citing *Lewis*, 523 U.S. at 850; *see also Sanford v. Stiles*, 456 F.3d 298, 306 (3d Cir. 2006) ("The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases."). "[A]ll that is required to satisfy deliberate indifference is 'conscious disregard of a *substantial risk* of *serious harm*' . . . regardless of whether that harm is either intended or certain to occur." *Kedra*, 876 F.3d at 447 (emphasis added) (quoting *Vargas v. City of Philadelphia*,

4

783 F.3d 962, 973-74 (3d Cir. 2015)).

The misconduct alleged in the Complaint is not of that ilk.  Biondino alleges that Defendants instructed her and her classmates to engage in a "sparring" exercise whereby one student would "hold the baton with both hands while another student as instructed to strike the baton holding student with punch paddles" without any protective equipment.  The risk of injury—indeed, the risk that a student would get injured in precisely the way that Biondino did—was clearly substantial.  *Id.* (citation omitted).  But the risk of harm inherent in this exercise—broken bones and other injuries along the lines of what Biondino suffered—was not "serious" enough to plausibly show that Defendants, as a matter of law, were deliberately indifferent.  *Id.* (citation omitted).  Simply put, where the defendant is not in a high-pressure situation, the Third Circuit requires a risk of significantly more serious harm to a plaintiff than has been alleged here.  *See, e.g.*, *id.* at 432, 448 (pointing a loaded gun at a person, failing to conduct the required inspection to see if it was safe to point, and then pulling the trigger while aimed at the decedent's chest); *Mann*, 872 F.3d at 168-69, 171-72 (sending a high school football player who was exhibiting concussion-like symptoms from a hard hit back into practice); *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 239-240, 246-47 (3d Cir. 2016) (allowing an unknown adult to sign a kindergartener out of school without asking her "to produce identification and verification that [she] had permission to leave").

Therefore, viewed in the light most favorable to her, Biondino's Complaint does not plausibly allege that Defendants "conscious disregard[ed] . . . a substantial risk of serious harm," *Kedra*, 876 F.3d at 447 (citation omitted), as is necessary under these circumstances to state a claim that they "acted with a degree of culpability that shocks the conscience," *Mann*, 872 F.3d at 170.  Her allegations of state-created danger against Defendants will be dismissed without

prejudice.

### B. *Monell* Liability

Next is Biondino's claim against the Bucks County Technical School Authority under *Monell*, 436 U.S. at 690-91, which is premised on allegations that the Authority "approv[ed] a dangerous curriculum; purchas[ed] dangerous weapons; and fail[ed] to provide adequate teacher instruction associated with both." The Complaint varies in how it describes the policy for which these decisions serve as evidence, alternately calling it a policy "of having the students enrolled in the Emergency Medical Services program engage in impact weapons training with batons and punch paddles" and a policy "of deliberate indifference to Plaintiff's overall health, safety and welfare." As discussed above, the Complaint does not plausibly allege that, as a matter of law, any defendant was deliberately indifferent to Biondino's safety, so only the former proffered policy could serve as a basis for *Monell* liability. And Defendants are entitled to dismissal of Biondino's *Monell* claim based on that alleged policy too.

"Local governments, such as school districts, cannot be held liable under § 1983 for the acts of their employees. Instead, local governments may be found liable under § 1983 for 'their own illegal acts.'" *Mann*, 872 F.3d at 174-75 (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)); *see Monell*, 436 U.S. at 691. Specifically, "a municipality may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." *Sanford*, 456 F.3d at 314 (citations omitted).

Policies and customs are distinct legal regimes. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (noting that *Monell* devised "a two-path track to municipal liability under § 1983"). A policy "is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict," *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (internal quotation marks

6

and citation omitted), or "if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes," *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "[M]unicipal liability may be imposed for a single decision by municipal policymakers . . . where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Based on these principles, school officials can be considered final policymakers for purposes of *Monell* liability. *McGreevy*, 413 F.3d at 368; *see also Hilsenrath ex rel. C.H. v. Sch. Dist. of Chathams*, 500 F. Supp.3d 272, 287 (D.N.J. 2020), *vacated on other grounds*, 2022 WL 2913754 (3d Cir. July 20, 2022) (citation omitted) ("Policy can be shown if an official with final policymaking authority for the Board approved or ratified the curriculum and materials."). Whether a given school official is a final policymaker is a function of state law. *See McGreevy*, 413 F.3d at 368. In contrast, "[c]ustoms are practices of state officials . . . so permanent and well settled as to virtually constitute law." *Berg*, 219 F.3d at 275 (internal quotation marks and citation omitted). "Where the alleged custom is not itself unconstitutional, the plaintiff bears a comparably heavier burden of establishing municipal fault and causation by more than proof of a single incident." *Pelzer v. City of Philadelphia*, 656 F. Supp.2d 517, 532 (E.D. Pa. 2009) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)).

Here, Biondino's Complaint does identify a cognizable "official proclamation, policy, or edict" that can serve as a hook for the Authority's liability. *Berg*, 219 F.3d at 275 (quotation omitted). Even if the Court assumes that, under Pennsylvania law, curriculum approval is a cognizable policy for purposes of *Monell* liability, the Complaint does not identify any "official with final policymaking authority" under state law who approved that curriculum. *See*

7

*McGreevy*, 413 F.3d at 368; *Hilsenrath*, 500 F. Supp.3d at 287.  Therefore, as currently pleaded, Biondino has not alleged that the Authority was a final policymaker.  Nor does she allege that the Authority "ratified the unconstitutional actions of a subordinate." *McGreevy*, 413 F.3d at 367 (citation omitted).  Finally, Biondino does not allege any informal practices "so permanent and well settled as to virtually constitute law," so she has not plausibly identified any municipal custom either.  *Berg*, 219 F.3d at 275.  Instead, her *Monell* claim primarily relies on one-time acts—curriculum approval and procurement—that are not the makings of a municipal custom.[3]  Biondino's *Monell* claim therefore will be dismissed without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted.  An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*

**WENDY BEETLESTONE, J.**

---

[3] To the extent that Biondino also alleges a failure to train "teachers in the use of impact weapons, as well as punch paddles, for use in the classroom setting," that claim, too, fails because her Complaint has not identified "[a] pattern of similar constitutional violations by untrained employees." *Gass v. Matthews*, 2019 WL 1641064, at *5 (E.D. Pa. Apr. 16, 2019) (quoting *Connick*, 563 U.S. at 62).