IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JENNA-JO BIONDINO,**<br>   **Plaintiff,**<br><br>v.<br><br>**BUCKS COUNTY TECHNICAL SCHOOL AUTHORITY, operating as BUCKS COUNTY TECHNICAL HIGH SCHOOL, and KIMBERLY CARON,**<br>   **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  24CV1252** |

## MEMORANDUM OPINION

Jenna-Jo Biondino, a former high school student, sued Defendants Bucks County Technical School Authority (the "Authority"), operating as Bucks County Technical High School (the "School"), and Kimberly Caron, a teacher there, for violations of 42 U.S.C. § 1983, alleging that the School's poor management of a program that she was enrolled in led to her injuring her finger.[1]  Defendants now move to dismiss Biondino's second Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendants' Motion will be granted in part and denied in part.

  **I.**  **BACKGROUND**[2]

According to her Complaint, at the time of the events in question, Biondino was a student at the School, where she "was on the Emergency Medical Services vocational career pathway

---

[1] Biondino's first Complaint was dismissed without prejudice for failure to state a claim.  *See Biondino v. Bucks County Tech. Sch. Auth.*, 2024 WL 2277834 (E.D. Pa. May 20, 2024).  The matter now returns after Biondino filed her second Complaint (*see* ECF No. 18).

[2] The following facts are taken from Biondino's second Complaint, well-pleaded allegations from which are taken as true at this stage.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

within the Health and Human Services program" offered there.

As part of that program, she was instructed by one of her teachers, Defendant Caron, to engage in impact weapons training, in which students would pair up and spar, one holding a baton, and the other holding punch paddles. Such batons are classified by the Pennsylvania State Police as "less-lethal weapon[s]." The student with the punch paddles was instructed to hit the student holding the baton. Students holding the batons, including Biondino, were not provided any protective equipment to cover their hands and fingers.

Neither the sparring exercise nor the baton tactics it was intended to teach were a "necessary training relative to [Biondino's] career pathway" as in the Emergency Medical Services program; however, students in Biondino's program were not given any opportunity to opt out of participating in the training. While sparring with a classmate, Biondino was struck on the left hand and suffered a broken left pinky finger, which required surgery and occupational therapy to repair, and caused "sensory nerve damage with accompanying pain, a loss of grip strength and a loss of full manual dexterity of her left hand."

## II.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading

of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11.

### III. DISCUSSION

Biondino sues under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. In accordance with its plain text, any viable § 1983 claim requires a plaintiff to plausibly allege that a person acting under color of law violated "a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Just as in her previous complaint, Biondino now pleads two theories of liability under § 1983, both alleging violations of her Fourteenth Amendment right to bodily autonomy. The first theory relies on Defendants' alleged creation of the "opportunity" for her to be injured "that otherwise would not have existed"—the "state-created danger" theory of liability. *See Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017). The second, directed only at the Authority, alleges that it maintained an official policy, practice, or custom that violated her constitutional rights. *See Monell v. Dep't of Soc. Servs. of Cty. of New York*, 436 U.S. 658, 690-91, 694 (1978). Each theory will be considered in turn.

#### A. State-Created Danger Liability

In the Third Circuit, a plaintiff bringing a state-created danger claim under § 1983 must prove, among other things, that "a state actor acted with a degree of culpability that shocks the

3

conscience . . . ." *Mann*, 872 F.3d at 170 (quoting *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006)). Biondino's state-created danger claim was previously dismissed for failure to state a claim because the actions she alleged Defendants to have taken "d[id] not plausibly rise to a level that would shock the conscience." *Biondino*, 2024 WL 2277834, at *2-3. As explained in the previous memorandum, a defendant's deliberate indifference to a substantial risk of serious harm can "shock the conscious" in situations, like this one, where a defendant has the luxury of time to contemplate its choices and act mindfully. *Id*. at *2 (citing *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005)). However, because "the risk of harm inherent in [the sparring] exercise—broken bones and other injuries along the lines of what Biondino suffered—was not 'serious' enough to plausibly show that Defendants, as a matter of law, were deliberately indifferent," Biondino's allegations failed to state a claim for relief under a state-created danger theory.

In her second Complaint, Biondino has pleaded several new facts, including that she was never provided with protective gear for her hands and that Caron announced to the class that "the administration doesn't like me doing this because some of you are not yet 18," as well as several descriptions of the severity and financial impact of Biondino's hand injury. These additional facts better illustrate the severity of the harms that could flow from the sparring exercise and, in doing so, bring that risk of harm closer "to a level that would shock the conscience." *Id*. at *2.

Closer, though, is not enough here; the same Third Circuit cases that Biondino cites in support of her argument demonstrate that this Circuit requires a risk of harm more serious than the "broken bones and other injuries along the lines of what Biondino suffered" in order to ground deliberate indifference in the state-created danger context. *Id.* at *3. For example, in *Kedra v. Schroeter*, the Third Circuit found deliberate indifference where a firearms instructor

4

"acted with actual knowledge of a substantial risk of lethal harm" by pointing a loaded gun at a person, failing to conduct the required inspection to see if the gun was loaded, and then pulling the trigger while aimed at the victim's chest, killing him. 876 F.3d 424, 447-48 (3d Cir. 2017). Similarly, in *Mann*, the Third Circuit determined that a high school football coach acted with deliberate indifference when he sent a player who was exhibiting concussion-like symptoms from a hard hit back into practice, and the player experienced a second hard hit, which collectively resulted in a traumatic brain injury rendering the player incompetent. 872 F.3d at 168-69, 171-72 ("[The coach] was deliberately indifferent to the risk *posed by sustaining a second substantial blow to the head*.") (emphasis added). Finally, consider *L.R. v. School District of Philadelphia*, where the Third Circuit found deliberate indifference after a teacher allowed an unknown adult to sign a kindergartener out of school without asking the adult "to produce identification and verification that [the student] had permission to leave," and the student was later sexually assaulted by the adult. 836 F.3d 235, 239-240, 246-47 (3d Cir. 2016).

Although these cases do not lay down a bright-line rule establishing which kinds of injuries qualify as sufficiently serious to show deliberate indifference, the kinds of injuries they discuss serve as useful benchmarks—and though Biondino cites to these cases for their statements of the law, she does not explain how the risk of harm associated with the sparring exercise is sufficiently similar to the risks of death, traumatic brain injury, or sexual assault discussed therein. Since Biondino has not demonstrated that the underlying risk of harm associated with the sparring exercise is, as a matter of law, sufficiently serious to ground a finding of deliberate indifference, Biondino's second attempt at pleading liability under the state-created danger theory fails, and those claims will be dismissed once more. This time, however,

dismissal will be with prejudice.[3]

### B. *Monell* Liability

Next is Biondino's claim against the Authority under *Monell*, 436 U.S. at 690-91, which is premised on the allegation that the Authority was a "final policy maker" and used that power to approve the inclusion of the sparring exercise in the School's curriculum and to authorize the purchase of the batons and punch paddles utilized therein.

"Local governments, such as school districts, cannot be held liable under § 1983 for the acts of their employees. Instead, local governments may be found liable under § 1983 for 'their own illegal acts.'" *Mann*, 872 F.3d at 174-75 (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)); *see also Monell*, 436 U.S. at 691. Specifically, "a municipality may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." *Sanford*, 456 F.3d at 314 (citations omitted).

As stated above, Biondino's claim is premised on a "policy" theory of liability. For *Monell* purposes, a policy "is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict," *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (internal quotation marks and citation omitted), or "if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes," *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

---

[3] Although leave to amend should be freely granted "when justice so requires . . . a court may deny leave to amend when such amendment would be futile." *Budhun v. Reading Hosp. and Medical Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (internal quotations omitted). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." *Id.* As explained above, Biondino cannot plead any facts to plausibly support the inference that the risk of injury inherent in the sparring exercise was serious enough that ignoring that risk could constitute deliberate indifference. Accordingly, a second opportunity to amend her pleadings would be futile.

"[M]unicipal liability may be imposed for a single decision by municipal policymakers . . . where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Based on these principles, school officials can be considered final policymakers for purposes of *Monell* liability. *McGreevy*, 413 F.3d at 368; *see also Hilsenrath ex rel. C.H. v. Sch. Dist. of Chathams*, 500 F. Supp.3d 272, 287 (D.N.J. 2020), *vacated on other grounds*, 2022 WL 2913754 (3d Cir. July 20, 2022) ("Policy can be shown if an official with final policymaking authority for the Board approved or ratified the curriculum and materials." (citation omitted)). Whether a given school official is a final policymaker is a function of state law. *See McGreevy*, 413 F.3d at 368.

Biondino's first attempt at pleading *Monell* liability against the Authority was dismissed for failure to state a claim because, although Biondino did "identify a cognizable 'official proclamation, policy, or edict' that [could] serve as a hook for the Authority's liability" under *Monell*—namely, curriculum approval—she failed to "identify any 'official with final policymaking authority' under state law who approved that curriculum." *Biondino*, 2024 WL 2277834, at *4.

In her second Complaint, Biondino has corrected that shortcoming by pleading that the Authority, acting through its "Joint Board Committee and/or [its] then acting Administrative Director," was the "decision-maker[] possessing final unreviewable authority to establish policy, adopt curriculum, and to purchase equipment for classroom instruction." Biondino further pleads, with citations to Pennsylvania law, that "nothing is to be taught" or "purchased . . . that has not been pre-approved by the board of directors" of a school district. *See* 24 P.S. § 15-1512 (prescribing that the "board of school directors in every school district . . . shall arrange a course or courses of study" for its students); *id.* at § 8-801 (same with regard to procuring

"equipment . . . for the use of the public schools").[4]  Finally, Biondino pleads that the Authority's decisions to approve the sparring exercise; to purchase punch paddles and batons without also purchasing protective equipment; and, to withhold an opt-out from students not interested in sparring "directly caused [her] constitutional harm."  These allegations, which must be taken as true, are sufficient to allow her claim to proceed.[5]  *See, e.g., Pembaur*, 475 U.S. at 480 ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."); *McGreevy*, 413 F.3d at 368 ("[A]n official with policymaking authority can create official policy, even by rendering a single decision."); *Hilsenrath*, 500 F. Supp.3d at 287 ("Policy can be shown if an official with final policymaking authority for the Board approved or ratified the curriculum and materials.").

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

---

**WENDY BEETLESTONE, J.**

---

[4] The Authority does not now challenge Biondino's characterizations of these Pennsylvania statutes or its own governance structure.

[5] The Authority argues that Biondino's *Monell* claim must be dismissed because it is protected by qualified immunity, but this is incorrect; the Authority is a municipal entity, and as such is not entitled to qualified immunity. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017) (explaining that municipal entities are not eligible for qualified immunity).