IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JENNA-JO BIONDINO,**<br>　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**BUCKS COUNTY TECHNICAL SCHOOL AUTHORITY, operating as BUCKS COUNTY TECHNICAL HIGH SCHOOL,**<br>　　　　**Defendant.** | **CIVIL ACTION**<br><br><br><br><br>**NO.  24-1252** |

### MEMORANDUM OPINION

Jenna-Jo Biondino has sued Defendant Bucks County Technical School Authority, operating as Bucks County Technical High School, for violations of 42 U.S.C. § 1983, alleging that the School's policy of allowing students to engage in a combat training exercise resulted in a violation of her federal constitutional right to bodily integrity under the Fourteenth Amendment. Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendants' Motion will be granted.

**I.    FACTUAL BACKGROUND**

Except where otherwise noted, the following facts are not in genuine dispute.

At all relevant times, Biondino was a student at Bucks County Technical High School ("the School"), a school in Pennsylvania that prepares students for employment in a variety of career fields. Biondino was enrolled in the School's Emergency Services program, which trains students for careers in policing, firefighting, and emergency medical services. Students enrolled in the program must complete training for all three fields, regardless of which they seek to pursue after graduation. Upon satisfaction of the program's requirements, students will have

1

completed the Pennsylvania state requirements for obtaining professional licenses in each field.

In addition to their mandatory coursework, students are also allowed to participate in voluntary, Pennsylvania state-sponsored certification programs, which train students in specific skills that may make them more attractive candidates in their chosen fields. One such voluntary certification program offered to Biondino was the Personal Protection Baton Tactical ("PBBT") Training Certification. That certification program involved a written test and a hands-on training exercise. Only the written test was required as part of the School's Emergency Services curriculum. The hands-on exercise was optional for the sake of the School's curriculum, but was mandatory for any student who sought to be officially certified in PBBT techniques.

On May 23, 2022, Biondino participated in the hands-on PBBT exercise at the School. Although both parties now agree that the exercise was voluntary, Biondino testified that she did not understand it to be optional at the time she participated in it. The exercise—which was overseen by instructor Kimberly Caron, a former police officer—was conducted as follows. Students grouped themselves into pairs, with one student mimicking an attacker and the other student defending. The attacker was equipped with at least one "porkchop paddle"—a handheld paddle with a cushioned surface on its front side—while the defender wielded a collapsible police baton locked in its vertical position. Both devices are pictured below.




(A porkchop paddle.)                    (A man wielding a police baton.)

The attacker was instructed to use the porkchop paddle to perform slow strikes aimed at different parts of the defender's baton, so that the defender could practice situating the baton in the proper defensive position to rebuff the strike.  The porkchop paddle was supposed to be "presented vertically," such that the attacker made contact with the baton using the top or bottom of the paddle—which are "rigid" surfaces, unlike the padded portion on the front of the paddle—in order to make it more difficult for the defender to predict where exactly on the baton the strike would land.  The defender was instructed to grip the handle of the baton with one hand, and to position the other hand at the top of the baton with an open grip, as pictured below.



(A man demonstrating the defensive baton hand placement.)

Biondino and her partner—a friend with whom she felt comfortable doing the exercise—were assigned as the defender and attacker respectively. Biondino testified that she had "no issue" with understanding the instructions; that her partner was not trying to hit her personally, but rather aiming for her baton; and, that she did not feel that she was in danger of being injured before or while performing the exercise. However, after a few successful blocks, Biondino's partner, "in the split blink of an eye," accidentally landed her offensive strike on Biondino's left hand—the open-palmed hand at the top of the baton—and fractured Biondino's pinkie finger in so doing. Biondino required surgery to repair the fracture.

## II.   LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead, he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important . . . summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### III.   DISCUSSION

Biondino sues under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. In accordance with its plain text, any viable § 1983 claim requires a plaintiff to plausibly allege that a person acting under color of law violated "a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Biondino argues that Defendant is liable for a violation of her Fourteenth Amendment right to bodily integrity due to its policy of allowing students to engage in the PBBT exercise using "porkchop paddles" but without also providing protective hand-gear. This theory of municipal liability is rooted in the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of Cty. of New York*, 436 U.S. 658 (1978). In that case, the Supreme Court found that municipal entities—like Defendant here—cannot be held vicariously liable under § 1983 for constitutional violations committed by their employees. *See Monell*, 436 U.S. at 691, 694; *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009). Instead, municipal liability under § 1983 must be predicated on injuries allegedly caused by either: (1) actions taken by a municipal official pursuant to policies or customs of the municipal entity; or, (2) "a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

Biondino proceeds only under the first of these theories, arguing that Defendant maintained a policy that violated her constitutional rights—specifically, the policy of conducting the PBBT exercise with "porkchop paddles" but without protective hand-gear. "Plaintiffs," like Biondino, who "proceed under a municipal policy" theory must demonstrate the existence of "an *unconstitutional* municipal policy" in order to prevail. *Forrest*, 930 F.3d at 105 (emphasis added). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict,"

6

*Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)), or otherwise "acquiesce[s]" in the adoption of the same. *Oaks v. City of Philadelphia*, 59 F. App'x 502, 504 (3d Cir. 2003).

*Monell* imposes "rigorous standards" of both culpability and causation for municipal entities. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997). Accordingly, to prevail on a *Monell* claim, it is not enough to simply prove the existence of an unconstitutional policy; that policy must also be shown to be the "proximate cause" of the plaintiff's injuries. *See Kneipp*, 95 F.3d at 1213. This requires showing an "affirmative link" between the unconstitutional policy and the particular constitutional violation, *see Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quotations omitted), or that the unconstitutional policy was the "'moving force'" behind the plaintiff's injuries, *Berg*, 219 F.3d at 276 (quoting *Bryan Cnty.*, 520 U.S. at 404).

Defendant argues that Biondino's § 1983 claim fails at every step of the *Monell* analysis. Specifically, it argues that no reasonable juror viewing the undisputed facts could determine that she suffered any underlying constitutional violation; that Defendant maintained any unconstitutional policy; that Defendant is a "final decision maker" capable of creating official policy in the first place; or, that any policy of Defendant's, whether constitutional or unconstitutional, proximately caused her hand injury. Defendant is right on at least one of these fronts: even assuming *arguendo* (without in any way suggesting that this is the case) that a reasonable juror could determine that Biondino suffered a constitutional violation as a result of Defendant's policy of allowing students to train with "porkchop paddles" but without protective hand-gear, Biondino's claim fails as a matter of law because she identifies no caselaw, other legal authority, or record evidence suggesting that this policy is itself unconstitutional, which is

7

required in order to make out a *Monell* claim under the "policy or custom" theory of liability. *Forrest*, 930 F.3d at 106 ("[A] plaintiff alleging that a policy or custom led to his or her injuries must be referring to an *unconstitutional* policy or custom . . . ." (emphasis added)).

Whether a given policy or custom is unconstitutional for the sake of the *Monell* analysis is a function of federal constitutional law. *See Pena v. City of Lancaster*, 2025 WL 2213295, at *4 (E.D. Pa. Aug. 4, 2025); *see also Estate of Roman*, 914 F.3d at 799 (allowing *Monell* "policy or custom" claim to proceed where police department had "a pattern or practice of conduct . . . that deprive[d] individuals of rights, privileges, and immunities secured by the Constitution"); *Beck v. City of Pittsburgh*, 89 F.3d 966, 974 (3d Cir. 1996) (finding that plaintiff had adduced evidence of "the City's custom of acquiescing in the excessive use of force by its police officers" in violation of citizens' federal constitutional rights). The operative question is whether the policy itself is "facially unconstitutional." *Pena*, 2025 WL 2213295, at *4.

On this score, Biondino offers nothing more than the conclusory assertion that Defendant "violated [her] liberty interest in her personal security and bodily integrity under the Fourteenth Amendment" by "authorizing a dangerous activity to take place"—namely, the training exercise. Notably, she cites no legal authorities whatsoever in support of her position that the policy in question—*i.e.*, instructing students to spar with "porkchop paddles" but without protective hand-gear—amounts to a facial Fourteenth Amendment violation. She does not, for example, cite any Supreme Court, Third Circuit, or Eastern District of Pennsylvania caselaw—nor any treatises, scholarship, or legal commentary—which elaborate the contours of the right to "personal security and bodily integrity under the Fourteenth Amendment" upon which her *Monell* claim is premised. Nor does she cite any record evidence, whether disputed or undisputed, from which a jury could conclude that Defendant's policy was unconstitutional on its face. *See, e.g., Connick*

8

*v. Thompson*, 563 U.S. 51, 62 (2011) (explaining how "[a] pattern of similar constitutional violations" can be relevant to the *Monell* analysis). This dearth of legal and factual support is enough to doom her opposition to Defendant's Motion, because "an argument consisting of no more than a conclusory assertion . . . will be deemed waived." *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997).

Furthermore, the undisputed evidence in the record undercuts Biondino's position. For example, Biondino testified in her deposition that she felt comfortable participating in the PBBT exercise; that she did not feel she was in any danger while doing so; that she had "no reason to believe" she would be injured during the exercise; and, that no other student was injured during the exercise. She also testified that students pursuing the Emergency Services pathway—which requires students to learn skills pertinent to careers as police officers—"should . . . absolutely" have been trained in the use of impact weapons like batons. Even when viewed in the light most favorable to Biondino, this testimony flatly contradicts her characterization of the exercise, in her brief, as being so "dangerous" that Defendant's policy of allowing it to take place amounted to a violation of her constitutional right to bodily integrity.

As another example, Kimberly Caron—the instructor at the School who oversaw the training exercise and purchased the equipment for it—testified in her deposition that the exercise was a "tactile" and "dexterity based" lesson, such that providing the students with protective hand-gear "would inhibit the training" and render it even less "realistic" than it already was since, "in a real" combat situation, "you don't have time . . . to say 'Hold on a second, let me put on my gloves.'" In response, Biondino suggests that, putting concerns about *vérité* aside, gloves and "foam blockers" could have been used to make the exercise safer. But the operative question at summary judgment is not whether the exercise was as safe as it could have been; the

9

question is whether "a reasonable trier of fact, viewing all of the record evidence, could rationally find" that the way Defendant conducted the exercise was so dangerous as to be unconstitutional on its face. *Abington Friends Sch.*, 480 F.3d at 256. Since Biondino has not meaningfully advocated for that conclusion, and since the undisputed material facts militate against it, no reasonably jury could conclude that Biondino has established the elements of her *Monell* "policy or custom" claim. Accordingly, summary judgment will be granted in Defendant's favor.

    An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____
**WENDY BEETLESTONE, C.J.**